Case No. 14-1197 et al., Dover Energy, Inc., Black Mirror Division, Petitioner v. National Labor Relations Board Mr. Eastland for Petitioner, Ms. Von Wilpert for the Respondent Mr. Eastland, you're a long way from home. May I please reserve one minute for rebuttal? Your Honors, this issue, the issue in this labor case is not complicated, and the facts are really undisputed. The Board here found that Black Mirror violated Section 8A.1 of the Act by issuing a verbal warning to a union steward, Mr. Thomas Kanta, after Mr. Kanta twice, during collective bargaining negotiations with the UAW, made information requests that were beyond the scope of his authority as the union steward on second shift, unauthorized by the collective bargaining agent, the UAW, and that were unprotected as a matter of law. Can I ask a question about, would it have been an unfair labor practice for the company to have reprimanded Mr. Kanta for submitting the second information request? So in other words, no mention of future, but just, you submitted a second request, it was improper, we're not giving you the information, and we're hereby disciplining you with a reprimand. Yes, Your Honor, that would not be an unfair labor practice, because that information request was also unprotected because, I think you have to remember, that the right to request information is owned exclusively by the UAW, right? The duty to provide the information arises or emanates from the duty to provide, or from the duty to bargain under the Act, under Section 8D. Has the board conceded that that would not have been an unfair labor practice? Wasn't their position initially that that would have been an unfair labor practice? Yes, I would submit to this court that they have conceded it, and the reasons are because it was part of the complaint, it was tried, the administrative law judge rejected that with sound reasoning based on evidence in the record, and that issue was not, that factual finding was not disturbed by the board, even though it could have been appealed. Did they accept, did they list an exception to that finding? No, the board's decision in a footnote does state that it believed that it was unnecessary to rule on that issue. So the general counsel took exception to that finding by the ALJ? They did not take specific exception to that finding, Your Honor. They did not? No, there's general language if you look at the exceptions in the record that's, you know, just a general exception to the failure to find the allegations of violations as alleged in the complaint, but there's lots of authority that says that's not enough. In fact, I've been on the other end of that case before. Aren't we really arguing about the change that the board made in the ALJ's, well, not in the finding, but the ALJ found this request was completely, totally, whatever, unauthorized. He didn't have to go any further than that. He didn't have to say, now, if it had been authorized, this was protected information. The board of the general counsel said, well, he stopped too soon, he should have said, and the respondent, but the respondent independently should not have issued this warning because of the way it could be interpreted. Now, and aren't we really arguing about whether such requests, similar requests such as this, which clearly goes to the nature of the request, which is unauthorized, in any way could be read as also including an authorized request? Yes, Your Honor. A few points in response to your question. The ALJ did make a finding that on the board's theory here is that a reasonable person in all the factual circumstances facing Mr. Kanta, his future Section 7 rights would be chilled. That's essentially the theory. But they don't dispute that this request was unauthorized. No, that's an absolute fact. It's unauthorized by the union and unprotected as a matter of law. Those facts are undisturbed. And I would agree with you that the issue really is, and I would submit it this way, I would suggest that the issue is, is there substantial evidence in the record, right, and did the board actually consider context, right? So that's what this circuit has said. You've got to have substantial evidence in the record. You've got to point to actual evidence, and you've got to explain the basis for the conclusion. Of what? Of the finding. We don't have to worry about the evidence supporting whether it was unauthorized or not. Correct. It was unauthorized. Correct. The board's finding, Your Honor, is that by referencing the unauthorized, unprotected requests, that Mr. Canta, or better said, a reasonable person in Mr. Canta's shoes, would believe that that caution, hey, you can't do this because we've checked with the union twice and it's unauthorized and it's unprotected, that that somehow would quash or chill his future rights to bring actual requests for information that is authorized by the UAW and that is within the scope of authority. But Mr. Ewing, part of the context here is Mr. Canta saying, you mean if I ask for information I could be fired? And instead of the company responding, no, no, no, only, you know, of course you can ask for information relating to your duties as a union steward and supportive grievances, but here this is, you know, collective bargaining stuff, and you're, you know, for better and for worse you're represented by the people we're bargaining with. And, you know, it just really doesn't come across that way, and it seems like our decision in the Daniel Chrysler case is pretty strongly supportive of what the board did here. And, you know, so it's a blanket threat that's going to make someone think, meh, maybe I shouldn't, I mean this guy's not a lawyer, the union steward. He's a relatively new in this position, and, you know, he's trying to get clarification, and the context shows the clarification that he saw was pretty broadly answered. Your Honor, if I may, two points. First, as to the evidentiary point that you raised, the actual evidence is the testimony of the HR director, Mr. Kaminsky, who said when he handed that information request in person to Mr. Kanta, he explained and reiterated that that was given because he acted beyond the scope of his employment. And the ALJ credited the cogent testimony of Mr. Kaminsky over any conflicts, and so actually the record as it stands, because that was not accepted to, the credibility findings were not accepted to, the ALJ credited Mr. Kaminsky's versions of that event. And so the shrugging of the shoulders is actually not a finding of fact in this case. Didn't the ALJ say, in fact, that, well, Mr. Kaminsky was asked, was anything else said beyond, you know, the discussion with Mr. Kanta about why he was given the warning and Mr. Kanta saying that he thought that things were rigged or that there were backdoor dealings going on. Mr. Kaminsky said, no, nothing else was said. So in effect, Kaminsky directly contradicted Kanta on that, and the ALJ credited Kaminsky. That's correct, Your Honor. Right, and the other point I wanted to, in response to the prior question from the court, was the reference to the Daimler-Chrysler decision. We hit that, I think, in our initial brief, anticipating that that would be a question for the circuit. That case shows exactly why this circuit mandates you consider context. In that case, it was undisputed that the requests were related to grievance processing. There was some, a little bit of a, Judge Edwards' decision talks about how the last chance agreements that might have been maybe not relevant, but it was at least relevant enough that the union could request it. And the key distinction there, Your Honors, is all of those requests were authorized by the union. All of them were authorized by the union. And that's a very important question. And I think the failure to consider context is actually an error of law. It's arbitrary and capricious, and there's circuit law from this court. What do you do about the parenthetical? I mean, if the parenthetical had been left off, that is, describing what kind of information Kanta had requested, and instead had tracked the language of the first denial, saying, you asked for this financial relationships and all that sort of stuff, that's what the board seems to hang its hat on, that because the description of the information sought, which was protected information, but not disclosable to an unauthorized request. Right. I think by focusing on that, by parsing that warning so narrowly, the board commits error because it doesn't consider the whole context of the warning. In fact, this court's decision in ADTRANS in discussing whether a solicitation policy did the same thing, they criticized the board for not looking at the whole language. In that case, it was a policy. But that's exactly what the board's not allowed to do. It's not allowed to parse something and ignore all of the other record evidence of context, which shows that any person in Mr. Kanta's, any reasonable person in Mr. Kanta's shoes, would know because he was told that he was only being cautioned for unauthorized requests because they would interfere with the bargaining relationship with the union. I see that my time is up. I want to ask you a question about, could you go to the board's order? Yes. Oh, the paragraph right before the amended conclusions of law that begins here, the August 23rd warning, it's on Deferred Appendix 15. Yes, I have it. Okay. First couple sentences. Then the sentence, but future requests for such information could well be protected. Nobody disputes that. But if you changed it to say, but such future requests for information could well be protected, that is absolutely false. And that's what the warning said, that is, similar requests such as this will lead to discipline. I mean, it's the change from the focus on the unauthorized request to what it was he was asking for. Yes, he can ask for that information in a different role, but in this role he has no right to it at all. And this was the second time he had, as ALJ said, burdened the employer right at the time when the bargaining was at its most intense, I think he said, in August. Yes, Your Honor, in response to that, I think that's precisely why there is no evidence. I mean, the similar request has to refer to the actual evidence. The only actual evidence is unprotected, unauthorized requests. So similar can only refer to that. I would agree with that. I mean, I think the way the Court is reading it, at least, is, and this is the trouble, and this is why we have a dispute, is that, as Judge Henderson said, the parenthetical talks about a certain kind of information. That's the request. The first sentence is a characterization, but the actual request is a request for employee pay information, which is at the core of what a steward dealing with grievances is dealing with. So to say requests such as this. So there is ambiguity. It could be requests such as a frivolous request outside of bargaining by someone not authorized to participate. Clearly that's a tenable reading. But the risk is that it's also to this relatively low union person saying, if you ask for this kind of thing, we're going to get upset with you. And that ambiguity, I think, is what the Board is concerned with. With all due respect, Your Honor, I would submit that there is no ambiguity when the Board does its job, and that is considered context. As the dissent properly noted, the reference to continued frivolous requests, the parenthetical just refers to the actual information requested. What the Board cannot do is ignore those next two sentences in that paragraph that says, you are not on the bargaining committee and failed to work within the parameters of the committee. And I won't read it to you because you can see it. But the point is, when you actually consider context as this circuit court requires, the only evidence of context shows that no reasonable person could view it that way. Let me ask one question about that second request. He requests all employee paychecks for two particular pay periods and then all employee total hours. All means, I guess, all, every employee in the company. Is there any circumstance where, in investigating a legitimate grievance, he would be entitled to all employee paychecks? My initial response to that, Your Honor, would be no, because he's the steward for three people on second shift. And so his authority would be cabin. Now, could the UAW say, no, we want you to investigate that and authorize that request? Absolutely. But that's a critical point in this case, is this employer has a great relationship with the UAW. When they got the request, both requests, the second one included, they went and asked the union, hey, is this authorized? If it's authorized, then it would have been responded to. Right. And that's part of Kanta's concern here, right, is that the union and the employer seem to have a great relationship. And he's concerned that the employees he's representing may be disserved by what's going on. But I guess what your position is, is the labor law doesn't protect that. No, that's not our position, Your Honor. The position here is that the union, as the exclusive 9A representative, controls the right to request the information. Now, if Mr. Kanta believes that the union is breaching its duty of fair representation, acting inappropriately, he can file a charge under 8B with the board. The board can investigate. They can issue subpoenas. What Mr. Kanta does not have the right to do is to usurp the power of the union, the right of the UAW. And that's exactly the rationale. It's the majoritarian principle that the Supreme Court discusses in Emporium Caldwell, which is referenced by the ALJ in this decision. That's why you can't have it. Think about what we would have if we had any large union employer, 400, 500 employees. If the union can't control its right to request information, what's to stop Mr. Kanta or 200 other people from filing an information request every single day of bargaining? While the parties are trying to cut a deal, while they're getting ready for ratification? Once you know that this guy is not authorized, it's not a huge burden on the company that he submits requests. He's submitting requests. Now you know. It seems like it's already a non-burden. Kanta is not someone that's part of the bargaining team. He's submitting requests. Put them in the inbox and go on with bargaining. So the burden actually is a little unsympathetic. Well, Your Honor, I think that's the point of why this employer took the action. This isn't discipline. This is verbal counseling. Hey, stop this. Because it wants to avoid that disruption. And because it's unprotected and unauthorized, it had the right to do that. It didn't violate federal labor law. Thank you. All right. Ms. Vaughn-Wilpert. Good morning. Good morning, Your Honors. May it please the Court. My name is Marnie Vaughn-Wilpert, and I represent the National Labor Relations Board. Your Honors, the issue in this case is not to parse the language of a written warning to discern its best reading. Let me just, right off the bat, try to make sure I understand what the Board's position is. If the company had reprimanded Mr. Conta for submitting an improper information request after the second request, would that have been an unfair labor practice? Your Honor, I cannot prejudge what the Board would rule in that case, but that was not before the Board here. Answer my question. Do you know the law? Is it or isn't it? What's your position? Your Honor, my position, I cannot speak for the Board, but most likely the Board will look at the warning and look at the context and decide whether or not— I'm not saying a warning. I'm saying they reprimanded him. They didn't say anything about future. They just said, we're reprimanding you for submitting this improper information request. Would that have been improper discipline? Not necessarily, Your Honor. There's nothing in this decision that says that the company may not discipline its employees. All this decision is saying is when it does, it cannot impinge on their future right to engage in protected activity. So what you're saying in this case, the position that the Board is taking, is that it would have been okay for them to actually discipline him, but because they decided to be lenient and not actually discipline him and give him a verbal warning, which is below discipline, and say, don't do this anymore, then they violated the law, when they could have disciplined him. Yes, Your Honor. The Board didn't reach whether or not this discipline was lawful, but it didn't say it was unlawful. What it did say was the future threat of discipline was the problem here. But you're right, the Board did not say it was unlawful to issue the discipline, but the Board didn't rule on that. It was specifically noted that we are not going to decide whether this request was protected or not, or whether this discipline was lawful. So my opponent in counsel is incorrect to say, as a matter of law, this request was unprotected because the Board did not decide that matter of law. Well, the problem I'm having with your position is that in both of his information requests, he stated what the purpose was for them. Yes, Your Honor. And they had nothing to do with grievances of any of the people that he represented. No, Your Honor. As a shopsman, right? So when the company says similar requests, that's part of the context, right? Yes, Your Honor. That he knows that that's part of the context of the kind of requests that he can't submit anymore. So how is that potentially chilling him, or it's not a subjective stand? It's a reasonable person's stand. How can any reasonable person think that if they're actually submitting a request related to a grievance that they really have the authority to investigate, that that's being chilled? Because, Your Honor, that's not all the verbal warning said. It specifically listed out the type of information he very well may seek in the future, such as employee pay and hour information. What if you took that out? What if you took the parenthetical out? That would help, Your Honor. But there's other issues with this warning, such as the subjective and vague language of frivolous requests interfering with the operation of the business. There's a continued frivolous request, which refers back to the first one, which asked for the relationship between immediate children, wives, spouses, well, spouses, pensioners. And that was severely rejected as well. I want to make clear about something. Are you saying that the board is not taking a position on whether this request was unauthorized? Yes, Your Honor, not unauthorized, whether it was protected. So authorized and protected are two different things. Well, it's asking for protected information. Yes, Your Honor. But the request was unauthorized. By the union in this case. But all that means is that the company does not have a duty to provide that information. That does not mean the request itself was not protected. Employees who work together for the mutual aid protection may ask the company something, even outside the context of the union. It doesn't mean that the employer has to provide that information. That would be different. The duty to provide information would be based on whether or not it was authorized by the union. But his action in making a request, in its capacity as a steward, would necessarily be protected in the future. Would necessarily or wouldn't? I'm sorry, it could necessarily be protected. I apologize. Here, it wasn't only referring to frivolous information requests as in the parenthetical wage and hour information. It also stated that Mr. Conta should not interfere with the operations of the business. That's very similar to the kind of verbal threat the company made in Daimler Chrysler when it said, any overburdening requests will be disciplined. This court struck that down. But the request was authorized in Daimler. Yes, Your Honor, but that's not what this court relied on when determining that the future threat of discipline was the issue there. It did not say because this request was authorized, all future would be. It said that language is overbroad and it's vague, and that would chill a union steward's determination to make future requests. The petitioner said in their opening brief at page 20 that the board conceded that neither information request was protected by the act. I read your brief, and I couldn't find any place where you disputed that that had been conceded. Did I miss that? Yes, Your Honor, we did. We ceded, especially pointing to board footnote four on deferred appendix 15. The board did not reach whether it was protected or not. Where did you say that in your brief? Yes, Your Honor, we did. I could find the page for you. What did you mean at footnote six of your brief on page 22? I apologize, let me find it. Oh, which part, Your Honor? What does the... Footnote six. Footnote six, the beginning with more over. Oh, the board did not hold the warning unlawfully disciplined the request. The board did not reach that issue. So here the company could have very legally disciplined Mr. Condo, but it could not have done so in a way that... So that's why I don't understand your position. You're saying that the board did not hold that the company couldn't have disciplined him. Yes, Your Honor, that's true. And then the petitioner said that the board has conceded that it was unprotected conduct. It would have to be unprotected for the board to say that the company could legally discipline him, right? No, Your Honor, that's not the case. First, the board here did not reach the issue of whether it was protected. Second, the board did not say that the company may not discipline its employees. All it is saying is that when it does discipline its employees, it cannot do so in a way that threatens the employees' future ability to engage in protected activity. That's all the board said here. You're saying that this is about asking for information which employee rank and file employees can do, union members can do, union stewards can do. Yes, Your Honor. The company's duty varies depending on whether the request is authorized or not. Yes, Your Honor. But asking for information typically is not something that employees are prohibited from doing. Yes, Your Honor. And you're saying given the nature of the freedom to organize in the workplace, when an employer disciplines something that is about the exchange of information, it has to be especially clear. Yes, Your Honor. So it's the way that it was done. It's not the fact of this conduct being disapproved by the employer. Yes, Your Honor, exactly. And the board tried to explain that footnote that there does not need to be protected activity before the warning to make this unlawful. What's your best authority for that? Has our court ever held that you can have no Section 8A1 violation but nonetheless find that there was interference with future protected activity? Not specifically this court, Your Honor. In Dining with Chrysler, it did say that the threat was unlawful because it impinged on the union steward's right to engage in future activity. The board has previously held this over and over. In Paracel, for example, an employer fired an employee who was about to talk about wages with her fellow employees. When the company found that out, it nipped it in the bud and fired her. And she hadn't had the chance to engage in protected activity yet, but the board found that was a violation for the same policy reasons as if there were protected activity ahead of time. In Ellison Media Co., for example, when two employees were complaining about their employer's sexually inappropriate comments, the board didn't decide whether their specific complaints were protected, but did say if you issue an overly broad warning that says stop gossiping and stop complaining, that can be read to say don't ever talk about your rights. Are you talking about Ellison Media? I'm sorry, Your Honor? Are you talking about Ellison Media? Yes, Your Honor. That's in your footnote, but Ellison Media, that email they did find was protected. It was the sexual assault email that went to the wrong person. They did not pass on that. They did not, Your Honor. That's what I'm saying. And you've cited it for saying that it's unnecessary to decide it. Exactly. That's what I'm trying to say, Your Honor. I apologize. Footnote 4 begins, it's unnecessary for us to decide whether the requests themselves were protected activity. You then cite Ellison. In Ellison, you've got the parenthetical declining to pass on whether the email was itself protected. There the board did find that it was protected, the email that triggered the this has got to stop warning. No, Your Honor, the board did not find that. You read it, I'll read it. I read it as having found that. Okay. The board stated there that what led to the email was protected, the conversations. The what now? I'm sorry? That what prompted the email. The idea of discussing the supervisor's sexually inappropriate comments. But in the specific email itself, the content, it didn't decide whether the words stated in the email were protected. It just stated what led to it, those discussions would be protected. Well. Further, Your Honor, any ambiguities in this warning are construed against the company as the author of the warning. It is their job to make sure it is a narrowly tailored warning. Where's the ambiguity? Where's the ambiguity in the redundant such requests, similar requests such as this? They could have said similar requests. They could have said requests such as this. They said similar requests such as this. What is ambiguous about the description of the unauthorized request he made? Well, Your Honor, the words unauthorized are nowhere on the face of this warning. Second, it specifically details. Well, I'm not saying it is. I'm saying what is your interpretation of what similar and such as this refers to? Such as this refers to photocopies, employed paychecks, spreadsheets. No, it modifies requests. Yes, Your Honor. It doesn't modify the information. It modifies requests. There were two of them that were both unauthorized. They were in that context. That doesn't mean in the future that Mr. Conta could not ask for employee pay information in the future. Let me ask you this. If he makes an unauthorized request in the future, an unauthorized one, can he be disciplined? Possibly, Your Honor. We have to look at the context of the request. But the point is here is he was chilled from making further requests by the language in this warning. Moreover, for this court to overturn the board's holding, the company has to show the board's reading was unsupported or unreasonable. It's not unreasonable to see language such as frivolous requests, including copies of employee hour and pay information. Well, one of the board members thought it was unreasonable, and so did the ALJ. So if there were no more questions. Let me just ask one final question about you relying your brief on this testimony from Mr. Conta that he asked, you know, if I make further requests, am I going to be fired in that Kaminsky supposedly shrugged his shoulders? Didn't the ALJ credit Kaminsky over Conta on that point? The ALJ made credibility determinations on that point, but that's not the issue here. Because the board could read exactly what happened in the warning as well. We're not relying on credibility here. We're relying on whether or not Mr. Conta. I mean, you cite this in your brief to make the argument that somebody would be chilled and that Conta was indeed chilled. But I'm trying to get your response to the point that the ALJ seemed to have not credited that, and the board in their decision didn't explain that they were crediting Conta over Kaminsky or upsetting any of the ALJ's factual findings. So what's your basis for relying upon that evidence if it wasn't credited by the ALJ? Your Honor, I apologize. We didn't rely on the evidence. We put it in our statement of facts to detail the facts. But here the law is clear whether or not the coercion was effective is not part of the analysis. So we did not rely on that in our argument at all. All we relied on is whether or not a reasonable employee would see information about frivolous requests that included hour and pay and said you will be discharged if you do similar things in the future. Mr. Conta will reasonably have to be an adversary to the company when making future requests. We'll have to steer clear of the company's decision of what frivolous is when he makes those requests or else he could be discharged. So when you say in your brief at page 7, you quote, when Conta read the warning he asked Kaminsky, you mean if I ask more questions I could be fired? Kaminsky did not answer. He just shrugged his shoulders. And then you say Conta has not made any more information requests. So you don't think the board is not relying on that as part of the context, material context? It's not. No, Your Honors. It's not. It's just part of the statement of facts. Here the only issue is not whether he was actually coerced, whether a reasonable employee would feel chilled. And the board submits it would. Thank you. Does Mr. Eastland have any time left? Okay, why don't you take a couple minutes? You're new to our circuit. You can't really reserve time. I apologize. I'm usually in Cincinnati. We always give people time, so take a couple minutes. Thank you. I will be brief. Just a couple points in rebuttal. There's a question about whether the individual employees could file information requests. They can't do that. And that's not protected activity. The only way that that could be protected activity if there was some evidence of concerted protected activity for mutual aid and protection. The ALJ found there was not, and the board decision acknowledges that. So there is no such evidence in that regard. Do I have to go through the union steward to file a grievance? I mean, if I'm an employee. It depends on the collective bargaining agreement. In this? I believe in this instance that it does need to be, I think, I'd have to check the language, but I think the steward has to file it. But certainly once it's filed by the employee, it's processed by the union, and the union definitely owns the grievance through the procedure. But it's not concerted activity if a union steward in his union position does something that he thinks is for the good of his department? He's as a representative. He has to actually go back and get them on board, or can he do things saying I'm doing this for the group? And that's concerted activity. I thought that's what the labor law protected. There's really two types of protected activity under the statute, right? Section 7 is the rights we're talking about. There's union activity, which is all the things that we're talking about here with information requests. And then there's something which is nonunion, which is concerted protected activity for mutual aid and protection. It's like when I get together with a colleague and complain about overtime policies. Even though we don't have a union, we're acting together for mutual aid and protection. There's no evidence of union activity because it's unauthorized, and there's also no evidence of concerted protected activity in the nonunion setting is the point. So the getting together has to come before any request. Like if I were wanting to show that my workplace paid the men more than the women for the same work, and I wanted to get a little evidence of that before I got my colleagues riled up about it, that would not be concerted in the second sense, concerted protected activity. Because I haven't talked to them yet, but I'm wanting to get people organized to make sure that there's equal pay. Right. The board law would suggest that there are some circumstances where doing things in preparation for group action can be protected. There are case law, there are board cases that say that. However, in this record, there is no evidence that Mr. Kanta was doing that. That's a finding of the ALJ, and it's not disturbed. So I don't think that that hypothetical type of mutual aid and protection protected activity applies. You probably have this more at your fingertips than I do. When you say that's a finding of the ALJ, just do me a favor and point me to there. Sure. I think I was referring to, although Kanta's information request could be viewed as dissident intra-union activity, warranting the act's protection, the record does not establish that it responded at any intention of interfering as an internal union. Likewise, the evidence does not establish that any intent to retaliate. I think in that discussion there, and then I think it's also referenced in the board decision when they characterize it, and I don't know exactly where in the board decision, but I know it's in there. So you're looking at paragraph 40 on appendix page 7 of the ALJ. Right, as well as the board's reference to that. Well, the board's order is short. Where is it? Let me see if I can find it quickly. Here it is. Here it is. It's on the second page of deferred appendix 14, second column, last paragraph on the right. The judge also found that the general counsel failed to show that the information requests were otherwise protected activity because the record did not establish that Kanta had requested information on behalf of other employees or discussed with the other employees the concerns underlying the requests. Thanks. You want to wrap up? Yeah, just one additional point from a policy perspective that I'd raise. If employers cannot discipline individuals for engaging in misconduct and warn them against similar misconduct, that's a major problem, and that's what this order essentially stands for. Think of it this way. An example, if I were to use profanity and yell at my supervisor, I think we'd all agree I could get warned, disciplined for that. And so I get a warning that says, Mr. Eastland, you swore at your supervisor, you do it again, you do that similar conduct again, you're going to get fired. Under this theory, that's an unfair labor practice. It's an unfair labor practice. Here's why. Because somebody from the board could say, well, wait a second. What if next time Mr. Eastland's talking to his supervisor, he's talking about union activity, and it's in the heated exchange, and therefore he's allowed to use some level of profanity under the board's decisions in Atlantic Steel? And he doesn't lose protection of the act. It's always theoretically possible. And so I think it would have a significant impact, and that's why the board has to point to evidence. Thank you. Thank you. Judge Henderson, I just wanted to, if I could, note something that I thought was remarkable in the ALJ's decision, which was that at the end the ALJ said that counsel had conducted themselves with extreme professionalism and civility before her, and you almost never see that. I'd like to encourage that, given all of the uncivility and unprofessionalism that I've seen. So I would compliment you for the way that you've conducted yourselves in these proceedings. Let me second that on the record. I said the exact same thing to my law clerk, that this ALJ order was even-handed, thorough, and very, very civil with its recognition of the handling of the case.
judges: Henderson, Pillard, Wilkins